UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MIGUEL A. SOTO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Civ. No. 17-89-KM<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Miguel A. Soto brings this action pursuant to 45 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401–34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REMANDED.

### I.　BACKGROUND

Mr. Soto seeks to reverse a finding that he did not meet the Social Security Act's definition of disability from November 30, 2011 to May 26, 2015. (Pl. Br. 1-2).[1] Mr. Soto applied for DIB on May 22, 2013, alleging a disability onset date of November 30, 2011. (R. 28, 168-69). He reports being treated for lumbar decompression in April 2010, which was exacerbated by a March 2012 motor vehicle accident. (R. 253-54, 293, 300, 384). His claimed was denied

---

[1]　Citations to the record are abbreviated as follows:
"R." = Administrative Record (ECF no. 5-2)
"Pl. Br." = Plaintiff's Memorandum of Law (ECF no. 9)

1

initially on July 9, 2013 and upon reconsideration on October 4, 2013. (R. 28, 68-86).

Mr. Soto filed a written request for a hearing on November 14, 2013, which was held on March 6, 2015. (R. 28, 41-68). The attendees at the hearing were ALJ Shillin, Mr. Soto's attorney Jacob Neff, vocational expert ("VE") Brian J. Daly, and translator Sergio Garcia. (R. 28, 36). On May, 26, 2015, the ALJ issued a decision which found him "not disabled" for the purposes of the Social Security Act. (R. 28-36).

On November 30, 2016, the Appeals Council denied Mr. Soto's request for review, (R. 1-4), rendering the ALJ's decision the final decision of the Commissioner. Mr. Soto then appealed to this Court, challenging the ALJ's determination that he was not disabled from November 30, 2011 to May 26, 2015. (Pl. Br. 1-2).

## II. DISCUSSION

To qualify for DIB, a claimant must meet income and resource limitations and show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

2

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607,

3

610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

4

### B. The ALJ's Decision

ALJ Beth Shillin followed the five-step process in determining that Mr. Soto was not disabled from November 30, 2011 (the alleged onset date) to May 26, 2015 (the date of his hearing). The ALJ's findings may be summarized as follows:

**Step One:** At step one, the ALJ found that Mr. Soto had not engaged in substantial gainful activity since November 30, 2011, the alleged onset date. (R. 30).

**Step Two:** At step two, the ALJ determined that Mr. Soto had the following severe impairments: lower back pain and obesity. (R. 30).

**Step Three:** At step three, the ALJ found that Mr. Soto did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 30).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Mr. Soto had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except he can sit four hours and stand and/or walk four hours in an eight-hour workday, with the ability to change positions at will. He should have no climbing of ladders or scaffolds, no stooping, and no exposure to heights or heavy machinery. He can occasionally crawl, crouch, kneel, and climb stairs or ramps. He should have no exposure to temperature extremes.

(R. 32).

The ALJ also determined that Mr. Soto was unable to perform any past relevant work as a machine assembler (Dictionary of Occupational Titles ("DOT")# 638.361-010) or a mixer (DOT# 520.685-234). (R. 34). The demands of those jobs exceed his RFC. (R. 34).

**Step Five:** At step five, the ALJ considered Mr. Soto's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines. (R.

5

35). The Medical-Vocational Guidelines are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. Pt. 404, subpt. P, app. 2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* The ALJ determined that Mr. Soto has been able to perform jobs existing in significant numbers in the national economy since November 30, 2011. (R. 35-36). Relying on the testimony of VE Brian J. Daly, the ALJ identified several representative jobs that Mr. Soto could perform despite his limitations: envelope sealing machine operator (DOT# 208.685-026), bottle packer (DOT# 920.685-026), and paper pattern folder (DOT# 794.687-034). (R. 35). According to the VE, there are over 500,000 such jobs nationally. (R. 35).

Therefore, the ALJ ultimately determined that Mr. Soto was "not disabled" for the purposes of the Social Security Act. (R. 35-36).

### C. Analysis of Mr. Soto's Appeal

Mr. Soto challenges ALJ Shillin's determination that he has not been disabled from November 30, 2011 to May 26, 2015. He claims that the ALJ committed errors at steps four and five. (Pl. Br. 14-20). At step four, Mr. Soto argues that the ALJ erred in finding him capable of performing light work. (Pl. Br. 19). At step five, Mr. Soto contends that the ALJ's discussion with the VE failed to properly address his use of a cane and need to "sit or stand" at will. (Pl. Br. 19). Additionally, Mr. Soto notes that on June 18, 2017, he was granted disability benefits dating back to May 27, 2015—*i.e.*, the day after ALJ Shillin's decision. (Pl. Br. 14). He argues that this undermines the ALJ's determination.

#### i. The ALJ's Step Four Analysis

Regarding step four, Mr. Soto argues that the ALJ erred in finding him capable of performing light work. He avers that: **(1)** the ALJ did not make objective medical findings in the RFC; **(2)** he cannot walk or stand long enough to perform light work; **(3)** he cannot perform the exertional requirements of light work; **(4)** the ALJ should have found him disabled under the Medical-Vocational Guidelines at 201.09; **(5)** the ALJ did not address his use of a cane

6

when developing the RFC, and **(6)** the ALJ did not consider a doctor's opinion that he will likely miss four days of work per month.

**(1)** First, Mr. Soto argues that there are no objective medical findings in the RFC. This argument is unavailing because ALJs make administrative (not medical) findings and this ALJ based her decision on several medical sources. An RFC assessment "is an administrative finding on an issue reserved to the Commissioner," and is not a medical diagnosis or assessment. *Titles II & XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, SSR 96-5p, 1996 WL 374183 (July 2, 1996). Moreover, ALJ Shillin's RFC determination was largely based on the medical opinion of Mr. Soto's treating neurosurgeon, Dr. Rosenblum. (R. 33-34). Mr. Rosenblum opined on January 20, 2015 that Mr. Soto could sit for 2-4 hours and stand or walk for 3 hours in an 8-hour workday, provided that he is permitted to periodically alternate between sitting and standing every 45 minutes. (R. 357). Mr. Rosenblum also noted that Mr. Soto could frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 25 pounds or more. (R. 357). The ALJ gave his opinion significant weight, stating that it was "fairly consistent with the medical evidence as a whole." (R. 34).

The ALJ considered other medical evidence. For instance, Mr. Soto has had medical doctors report negative straight leg raising, intact sensation, full strength, and an intact gait. (R. 327, 345, 428-29, 431, 440-41, 444). For instance, in June 2014, Dr. Kostoulakos noted that Mr. Soto had 5/5 strength in his upper and lower extremities, and was able to heel-toe walk without difficulty. (R. 355-56).

An ALJ is not required to adopt a specific medical opinion in her determination. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional

7

capacity."). The ALJ makes her RFC determination based on evidence in the medical record. In this case, the ALJ discussed several medical opinions and incorporated them into her RFC determination, which is what is required under the statute.

**(2)** Second, Mr. Soto argues that he cannot engage in the significant amount of walking and standing required by many light work jobs. However, the ALJ did not find that Mr. Soto could perform the *full* range of light work. (R. 32-34). Dr. Rosenblum assessed Mr. Soto's abilities, which were consistent with a *certain range* of light work. (R. 357-58). ALJ Shillin then found that Mr. Soto could perform some light work jobs, given particular limitations, such as a four-hour limit on walking, a four-hour limit on standing, and the ability to change positions at will. (R. 32). These findings were supported by substantial evidence from Mr. Soto's treating physicians. (R. 327, 345, 428-29, 431, 440-41, 444). Thus Mr. Soto would not be required to meet the walking or standing demands of many light work jobs, but could meet the demands of others.

**(3)** Third, Mr. Soto objects to the determination that he can perform the exertional requirements of light work. Light work involves lifting no more than 20 pounds at a time and frequently lifting objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). The ALJ found that Mr. Soto could meet these requirements or was close to meeting these requirements. Dr. Rosenblum determined that Mr. Soto could frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20 pounds. (R. 357-58). Dr. Kostoulakos also noted that Mr. Soto had 5/5 strength in his upper and lower extremities. Together, these assessments are substantial evidence that Mr. Soto could perform a certain range of light work.

**(4)** Fourth, Mr. Soto argues that the ALJ erred by not finding him disabled under the Medical-Vocational Guidelines at 201.09—*i.e.*, sedentary work, closely approaching advanced age, limited or less education, unskilled work history. 20 C.F.R. Pt. 404, subpt. P, app. 2, tbl.1. This argument is essentially that the ALJ should have found that Mr. Soto can perform only

8

sedentary work. However, the ALJ found that Mr. Soto could perform a range (but not the entire range) of light work. This argument merely duplicates other arguments and does not provide additional support for Mr. Soto's claim. Mr. Soto was in between tables on the Medical-Vocational Guidelines: he can perform the full range of sedentary work and more, but he cannot perform the full range of light work. *Cf. Sykes v. Apfel*, 228 F.3d 259, 267-70 (3d Cir. 2000) (discussing the use of the Guidelines when a claimant does not fit into the "sedentary" or "light work" categories). Under these circumstances, the ALJ properly consulted the VE to determine Mr. Soto's ability to perform work given that he was between tables.

**(5)** Fifth, Mr. Soto contends that the ALJ did not incorporate his use of a cane into the RFC. He argues that there is "unrebutted" evidence that he uses a cane. (Pl. Br. 18). However, he does not provide a record cite for this evidence. Regardless, there is substantial evidence to support the ALJ's decision not to incorporate a cane limitation. There were findings of normal gait without the use of a cane, as well as had regular findings of negative straight leg raising, intact sensation, and full strength. (R. 327, 345, 428-29, 431, 433, 440-41, 444). In June 2014, Mr. Soto was able to walk without difficulty and was able to perform a heel-toe walk. (R. 355). Further, in January 2015, Dr. Rosenblum did not note that Mr. Soto requires a cane for ambulation. (R. 357-58).

To establish that a hand-held device is medically required, there must be medical evidence establishing both the need for the device and the circumstances in which the device is required. *Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Mr. Soto has not presented such medical evidence—and the evidence that exists is sufficient to support the ALJ's decision to not incorporate a cane limitation into the RFC.

**(6)** Sixth, Mr. Soto notes that the ALJ did not consider Dr. Rosenblum's opinion that he will likely miss more than four days of work per month. (R.

9

357-58); (Pl. Br. 6). This opinion is found in Dr. Rosenblum's "Medical Source Statement of Ability to Do Work-Related Activities," which is a form consisting mostly of check boxes with small areas for comments. (R. 357-58). Dr. Rosenblum marked that Mr. Soto would likely be absent from work "4 days or more per month" because of his impairments or treatments; he made no further comments. (R. 358).

In general, such check-box forms are not considered strong evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.... [W]here these so-called reports are unaccompanied by thorough written reports, their reliability is suspect." *Id.* (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)). This is because these documents have no written justification or evidentiary corroboration for the findings. *Id.* at 1065-66. Ultimately, "while these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983); *Green v. Schweiker*, 749 F.2d 1066, 1071 n.3 (3d Cir. 1984) (citing *O'Leary*, 710 F.2d at 1341).

Nonetheless, when the ALJ's determination conflicts with the opinion of a treating physician, the ALJ must make clear on the record his or her reasons for rejecting the opinion of the treating physician. *Brewster*, 786 F.2d at 585-86; *see Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (finding that an ALJ must "explicitly weigh all relevant, probative and available evidence" in the record (internal quotation marks omitted)). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987))).

While such check-box forms are generally not entitled significant weight, an ALJ must address their findings, especially when they reflect the opinion of the claimant's treating physician that the ALJ gave significant weight. (R. 34). An ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer*, 186 F.3d at 429. In this case, the ALJ did not address the absenteeism issue or offer any reason for rejecting the opinion of Mr. Soto's treating physician. The ALJ must address this on remand.

### ii. The ALJ's Step Five Analysis

Mr. Soto argues that the ALJ's discussion with the VE did not properly address his **(1)** alleged cane use and **(2)** need to "sit or stand" at will. I will discuss these issues separately.

**(1)** First, regarding his alleged cane use, the ALJ had substantial evidence to determine that a cane is not medically required for Mr. Soto. This was discussed in subsection II.C.i(5), *supra*. Therefore, the ALJ was not in error when she did not include cane usage in the RFC or in the hypotheticals posed to VE Brian J. Daly.

**(2)** Second, Mr. Soto argues that the ALJ did not properly address his need to "sit or stand" at will in her discussion with the VE. However, the RFC states that Mr. Soto "can sit four hours and stand and/or walk four hours in an eight-hour workday, with the ability to change positions at will." (R. 32). The ALJ also told the VE at the hearing that Mr. Soto needed to be able to "sit/stand at will and change position at will." (R. 62).

Mr. Soto argues that the "sit or stand" limitation is not consistent with the jobs selected by the VE because the relevant job descriptions do not mention a "sit or stand" option. It is true that an ALJ must ask a VE whether her testimony is consistent with the DOT, and to elicit a "reasonable explanation" for any conflict between the two sources of information. *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002); *see Titles II & XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-04p, 2000 WL

11

1898704, at *2 (Dec. 4, 2000).[2] However, the DOT is silent with regard to the "sit or stand" option. *See Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) ("The DOT, however, does not include sit/stand options in job descriptions."); *Conn v. Astrue*, 852 F. Supp. 2d 517, 528 (D. Del. 2012) ("[T]he VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options."). Rather, the VE incorporated the "sit or stand" requirement into his determinations. Therefore, the ALJ did not erroneously fail to inquire into an explicit conflict between the VE's testimony and the DOT. A remand is not warranted for these circumstances.

### iii. Subsequent Award of Benefits

Mr. Soto notes that he was granted disability benefits dating back to May 27, 2015—*i.e.*, the day after ALJ Shillin's decision. (Pl. Br. 14). He argues that this undermines the ALJ's determination of "not disabled." However, the Third Circuit has held that a subsequent award of benefits is not, on its own, cause for remand or reversal:

> [T]he fact that another ALJ found [the claimant] to be disabled does not, in itself, warrant remand or reversal. Remand or reversal based on the subsequent favorable decision would be appropriate only if that decision was based on new and material evidence that [the claimant] had good cause for not raising in the prior proceeding.

*Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 120 (3d Cir. 2012) (internal citations omitted); *see Jackson v. Astrue*, 402 F. App'x 717, 718 (3d Cir. 2010) ("Standing alone, the fact that the Commissioner subsequently found claimant to be disabled does not warrant remand or reversal in the absence of new and material evidence, which claimant here has failed to provide."); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652-53 (6th Cir. 2009).

---

[2] When this step is omitted, remand is often required unless substantial evidence exists in other portions of the record that can form an appropriate basis to support the ALJ's result. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Jones v. Barnhart*, 364 F.3d 501, 506 n.6 (3d Cir. 2004).

12

There is no inconsistency between a finding that Mr. Soto was not disabled from November 30, 2011 through May 26, 2015 and a finding that he was disabled from May 27, 2015 to the present. The later finding does not require that the earlier one be vacated, any more than the earlier finding of non-disability should have precluded the later application. Medical conditions change. In this case, Mr. Soto has not presented new or material evidence, relating to the earlier period, that would compel a different result on his first application. Nor has he presented good cause for not presenting such evidence to ALJ Shillin in the prior proceedings. Therefore, the subsequent award of benefits will not, in itself, warrant a remand or reversal.

### III. CONCLUSION

For the foregoing reasons, I will therefore order a limited remand to the agency. The only issue requiring attention on remand is Dr. Rosenblum's opinion that Mr. Soto will likely be absent from work for four days or more per month. I do not take a position, express or implied, as to whether there should or should not be a finding of disability on remand; that is for the SSA to determine.

An appropriate order accompanies this opinion.

Dated: January 10, 2018

**KEVIN MCNULTY**
**United States District Judge**